**No. 42037.**—Protest 669017-G of Frank Samuel & Co., Inc. (Boston).

DALLINGER, Judge: This is a suit against the United States, arising at the port of Boston, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation invoiced as spiegeleisen. Duty was levied thereon at the rate of 25 percent ad valorem under the provision in paragraph 302 (o) of the Tariff Act of 1930 for "All alloys used in the manufacture of steel or iron, not specially provided for." It is claimed to be properly dutiable at the rate of 75 cents per ton under the provision in paragraph 301 of said act for "spiegeleisen containing more than 1 percent of carbon * * * *Provided*, That spiegeleisen for the purposes of this Act shall be an iron manganese alloy containing less than 30 per centum of manganese."

At the hearing held in Philadelphia in February 1939, the laboratory report of the Government's chemist, D. D. Greene, was admitted in evidence as Exhibit 1. According to this report an analysis of the imported merchandise herein is as follows:

|  | Percent |
|---|---|
| manganese | 27. 19 |
| silicon | 7. 13 |
| carbon | 3. 32 |

The plaintiff then offered in evidence the testimony of two witnesses. The first, Samuel A. Cochran, vice president and treasurer of the plaintiff corporation, testified that the business of his company consisted of buying and selling ores, alloys, and raw materials which entered into the manufacture of iron and steel; that he had managed the business of the plaintiff corporation for the past thirty-six years; that previous to that time he had had experience as a metallurgist, having been employed by the Pencoyd Iron Works as a chemist for five years; that he had handled different kinds of iron manganese alloys; that there were various kinds of iron manganese alloys, such as ferromanganese, spiegeleisen, calcium manganese, silicon manganese, etc.; that an iron manganese alloy is one that contains iron and a substantial amount of manganese; that the term alloy means a mixture or combination of one or more metals; that in his opinion the imported merchandise is an iron manganese alloy; that he was the same person who testified in the case of *United States* v. *Frank Samuel & Co.*, customs appeal 4108, T. D. 49574; and that the merchandise herein is the same in all material respects as that involved in said cited case.

At this juncture the record in the case of *United States* v. *Frank Samuel & Co.*, T. D. 49574, 73 Treas. Dec. 836, was incorporated herein.

The witness then proceeded to testify that he had been familiar with spiegeleisen over a period of more than thirty-six years; that in his opinion the merchandise at bar was spiegeleisen; that he had sold the merchandise at bar to the Griffin Wheel Co. as high silicon spiegeleisen, the original order and invoice for the

same being admitted in evidence as Collective Exhibit A; that he had handled considerable amounts of what is known as silicon-spiegel, and that silicon-spiegel is a grade of spiegeleisen containing 10 percent or over of silicon, the balance consisting mostly of iron.

On cross-examination he testified that an alloy which contained 30 percent or less of manganese was an iron and manganese alloy; that a manganese alloy containing 15 percent silicon would be known as a high silicon spiegeleisen but would still be an iron manganese alloy; that manganese alloys sometimes contain 15.20 percent of silicon; that a silicon manganese alloy is one where the manganese runs over 30 percent; and that so-called silicon spiegel is a type of spiegeleisen.

The plaintiff's second witness, Frederick Wynkoop, a qualified metallurgical chemist and the owner of the firm of Booth, Garrett & Blair, testified that his business was to analyze all types of material including ores and alloys, entering into the manufacture of steel; that he had long experience in analyzing all kinds of iron manganese alloys; that manganese alloys of iron and manganese contain a substantial amount of the latter; that he had analyzed different kinds of spiegeleisen; that spiegeleisen was an alloy of iron and manganese containing 15 to 20 percent of manganese, together with carbon and other impurities; that in his opinion the imported material was a high silicon spiegeleisen; that it was an iron manganese alloy; that so-called silico-spiegel was merely a variety of spiegeleisen containing more than the usual amount of silicon; and that the term "spiegel" in the hyphenated word "silico-spiegel" was an abbreviation of spiegeleisen.

On cross-examination he testified that the alloy known as silico-spiegel was not employed for any different purpose than spiegeleisen is used; that he based his answer that silico-spiegel was simply a variety of spiegeleisen on his own experience in analyses, the term being applied by metallurgists and persons connected with the steel industry and in textbooks; that an alloy containing approximately 29 percent manganese and 1 percent silicon would be spiegeleisen; that an alloy containing 29 percent manganese and 10 percent silicon would still be spiegeleisen, but containing over 10 percent of silicon would be silico-spiegel; that alloys containing 30 percent or less of manganese and from 3 to 7 percent of silicon would be iron manganese alloys; that he did not agree with Exhibit G, circular 6034 issued by the United States Bureau of Mines, Department of Commerce, entitled "Information Circular," that an alloy containing 20 to 50 percent of manganese and a silicon content of from 4 to 10 percent would be designated as silico-spiegel; that he still maintained that the dividing line between what is spiegeleisen and silico-spiegel was 10 percent of silicon; and that an alloy containing 8 percent of silicon would still be an iron manganese alloy.

Upon this record we follow the decision in the above-cited case and hold as a matter of law that the imported merchandise herein is spiegeleisen within the meaning of paragraph 301 of the Tariff Act of 1930, and as such is properly dutiable at the rate of 75 cents per ton, as alleged by the plaintiff, rather than at 25 percent ad valorem under paragraph 302 (o) of said act, as classified by the collector. That claim of the plaintiff is therefore sustained; but as to all other merchandise the claims are overruled.

Judgment will be rendered accordingly.